IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ADAM HOIPKEMIER, individually and
on behalf of all others similarly situated,
et al.,

     Plaintiffs,

         v.

DUANE V. MILLER, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-00600-TWT

## OPINION AND ORDER

This is a case about fraud and racketeering. It is before the Court on
Defendant Oak Ridge Project Management, LLC's ("Oak Ridge") Motion to
Dismiss the Initial Complaint [Doc. 25], Defendant Eric MacLeod's Motion to
Dismiss the Initial Complaint [Doc. 26], Plaintiffs Kevin Epps and Adam
Hoipkemier's Motion to Remand [Doc. 32], Defendant Eric MacLeod's Motion
to Dismiss the Amended Complaint [Doc. 34], and Oak Ridge and Duane V.
Miller's Motion to Dismiss the Amended Complaint [Doc. 35]. For the reasons
set forth below, Oak Ridge's Motion to Dismiss the Initial Complaint [Doc. 25]
and MacLeod's Motion to Dismiss the Initial Complaint [Doc. 26] are DENIED
as moot. Epps and Hoipkemier's Motion to Remand [Doc. 32] is GRANTED.
Accordingly, the Court declines to rule on Oak Ridge and Miller's Motion to
Dismiss the Amended Complaint [Doc. 34] and MacLeod's Motion to Dismiss
the Amended Complaint [Doc. 35].

## I.    Background

This case concerns a scheme to allegedly defraud Plaintiffs of their investments in a fund that they expected would qualify them for charitable tax deductions. Plaintiffs Adam Hoipkemier and Kevin Epps filed this action on behalf of themselves individually, other purported class members, and Nominal Defendant Monteagle-Oak Ridge Fund, LLC (the "Monteagle Fund" or "Fund"). This case is before the Court following removal from the Superior Court of Fulton County. Since being removed, the Plaintiffs have filed an amended complaint by special appearance ("Amended Complaint") [Doc. 29] and moved to remand the case to state court [Doc. 32], and the Defendants have moved to dismiss the Amended Complaint under Rule 12(b)(6) [Docs. 34–35]. The Court notes that the Defendants also previously moved for dismissal of the original complaint filed with the notice of removal ("Initial Complaint") [Docs. 25–26], but those motions became moot with the filing of the Amended Complaint [Doc. 29].

In considering the remand and dismissal motions, the Court notes that the operative pleading for each is different. The operative pleading for the remand motion is the Initial Complaint because "all jurisdictional facts are assessed as of the date of removal, and subsequent events, including the filing of an amended complaint, do not alter the jurisdictional analysis." *Mitchell-Hollingsworth Nursing & Rehab., Ctr., LLC v. Blue Cross & Blue*

2

*Shield of Mich.*, 919 F. Supp. 2d 1209, 1212–13 (N.D. Ala. 2013) (citing *Burns v. Windsor*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994)). The operative pleading for the dismissal motion is the Amended Complaint. Because the remand motion must be considered first, the Court begins by laying out the allegations of the Initial Complaint below.

In September 2019, the Monteagle Fund raised $11,672,500 from a securities offering. (Notice of Removal, Ex. A ("Initial Compl."),[1] ¶¶ 15–16 [Doc. 1-1]). During the offering, the Fund allegedly represented through various offering documents and communications that it had a "pending" agreement to purchase an interest in Oak Ridge Acquisitions, LLC ("Acquisitions LLC") and that Acquisitions LLC owned a piece of real property (the "Subject Property") that could provide valuable tax benefits to the investors. (*See id.* ¶¶ 63, 18, 22). Specifically, the Fund allegedly represented that the donation of a conservation easement on the Subject Property would allow investors to claim charitable tax deductions on their personal tax returns. (*See id.* ¶¶ 73, 66). A conservation easement is a "restriction[ ] placed on the use of real estate to preserve property for conservation purposes," and the tax code "allows donors of such easements to claim a non-cash charitable

---

[1] Ex. A of the Notice of Removal is a fifty-five-page PDF that includes the Initial Complaint (pages 1–20) and two associated exhibits (pages 21–50 for one exhibit and pages 51–55 for another). The Court uses paragraph numbering to refer to the Initial Complaint on pages 1–20 of Ex. A.

contribution deduction for the value by which the easement impairs the fair market value of the property." (*Id.* ¶ 4). To demonstrate the profitability of such an investment, the Fund represented to potential investors that the appraised value of the donation of the easement was $76,955,000. (*Id.* ¶ 22; *see also* Notice of Removal, Ex. A ("Demand Letter"),[2] at 53 [Doc. 1-1] ("[The Defendants] organized, structured, and solicited investments in unregistered securities from the members of Monteagle-Oak Ridge based [on] an appraisal prepared by Clay Weibel . . . .")).

Purportedly in reliance on the above representations, Hoipkemier, Epps, and other investors purchased units of the Monteagle Fund. (Initial Compl. ¶ 16). Hoipkemier and Epps allege that they invested $110,000 and $125,000, respectively. (*Id.* ¶ 16(a)–(b)). Several months later, in May 2020, the Fund "prepared and issued" Form 8886s for the 2019 tax year to its investors, including the Plaintiffs. (*Id.* ¶ 47). According to the Initial Complaint, Hoipkemier received a form that "reflected $688,363 in charitable non-cash deductions for the 2019 tax year." (*Id.* ¶ 48). The Plaintiffs subsequently "claimed charitable tax deductions allocated to the Fund on their [2019] personal tax returns." (*Id.* ¶ 6).

---

[2] The Court uses the PDF page numbering to refer to the Demand Letter on pages 51–55 of Ex. A.

Only after filing their 2019 tax returns did the Plaintiffs discover what they call the Defendants' "conservation easement syndication scheme." (*Id.* ¶ 2). First and foremost, the Plaintiffs state that the IRS "has disallowed the charitable contribution deduction passed through to Plaintiffs and other investors in the Fund in their entirety, imposed a gross valuation misstatement penalty of $11,304,240, and assessed $5,247,865.52 in interest as of May 10, 2023." (*Id.* ¶ 7). According to the Initial Complaint, the Fund is now insolvent, (*id.* ¶ 114), and the Plaintiffs have incurred damages equal to the "lost value of their investments in the Fund, back taxes, penalties, and interest," (*id.* ¶ 57; *see also id.* ¶¶ 74, 83). The Plaintiffs have named Oak Ridge, Duane V. Miller, and Eric MacLeod as Defendants and have named the Fund as a Nominal Defendant. Miller and MacLeod jointly sponsor the Fund, (*id.* ¶¶ 12–13), and Oak Ridge is the company that manages the Fund, (Initial Compl. ¶ 11). Miller additionally manages Oak Ridge. (*Id.* ¶¶ 12, 17).

The Plaintiffs allege that Defendants Miller, MacLeod, and Oak Ridge acted fraudulently both during and following the offering. At the time of the offering, they allege that the Defendants did not disclose material information regarding (1) the original market price of the Subject Property, (2) the appraisal, or (3) the membership interest purchase agreement. (*Id.* ¶¶ 43, 51, 61, 63-65, 76, 79, 94-97). The Court briefly explains each. First, the Plaintiffs

allege that Acquisitions LLC[3] originally acquired the Subject Property in December 2018 for only $1 million from an unrelated third party—an amount substantially below that of the subsequent appraisal. (*Id.* ¶ 65). Miller and MacLeod did not disclose these supposedly material facts to the Fund's investors. (*Id.*). Second, according to the Initial Complaint, Miller and MacLeod "knowingly acted in concert to design, promote, sponsor, and sell interests in the Company that they knew were based on a grossly inflated appraisal to enrich themselves at the expense of the [Fund] and its investors, including Plaintiffs." (*Id.* ¶ 79). Moreover, the appraisal commissioned for the Subject Property was allegedly "grossly inflated" and not a "qualified appraisal" under IRS regulations. (*Id.* ¶¶ 43, 61). The Plaintiffs claim that Miller and MacLeod "had a duty to disclose" the inflated appraisal, including "material facts relating to dates, appraiser, and other circumstances of the appraisal." (*Id.* ¶¶ 51, 64). They also claim that Miller and Oak Ridge "knew or reasonably should have known" that the "inflated appraisals [ ] would be disallowed upon audit by the [IRS]." (*Id.* ¶ 97). And the Plaintiffs claim that is exactly what happened—the IRS disallowed the charitable deductions after "finding that

---

[3] For clarity, the Court states that Acquisitions LLC purchased the Subject Property, based on the Amended Complaint. (Am. Compl. ¶ 21). However, the Initial Complaint technically alleges that White-Light Trust and Hunter Trust purchased it. (Initial Compl. ¶ 65). White-Light Trust and Hunter Trust each possessed a 50% ownership interest in Acquisitions LLC. (Am. Compl. ¶ 21). The difference is not significant to the Court's analysis.

the appraisals are vastly inflated and not credible." (*Id.* ¶ 76). Third, Defendants Miller and Oak Ridge did not disclose that the Fund's purchase of a membership interest in Acquisitions LLC was a related-party transaction or still "pending." (*Id.* ¶¶ 94–97, 63). The Initial Complaint alleges that Defendant Miller had a fiduciary duty to disclose any related-party transactions and ensure they established fair terms but that he failed to do so regarding the membership interest purchase agreement. (*Id.* ¶¶ 94–97). During the offering, the Fund additionally stated in its private placement memorandum—a document issued by companies selling securities to disclose information about the offering—that it had a "pending" agreement to purchase an interest in Acquisitions LLC, but the agreement "was not executed until December 24, 2019." (*Id.* ¶ 63).

In addition to the Defendants' actions during the offering, the Plaintiffs allege the following facts regarding the period after the offering: (1) Miller and MacLeod failed to supplement the Fund's disclosures with information about a relevant criminal investigation; (2) Oak Ridge and Miller failed to respond to the Plaintiffs' demand letter, and (3) Miller improperly remains the Fund's IRS representative despite being investigated for tax matters. The Court again briefly walks through each allegation. First, Miller allegedly knew as of "spring of 2020" that "he was the target of a [nonpublic] criminal investigation by the Tax Division of the Department of Justice" for "syndicated conservation

easement transactions." (*Id.* ¶¶ 5–6, 50). MacLeod learned at some point afterward that he was also a target. (*Id.* ¶ 26). However, neither Miller nor MacLeod "disclose[d] the existence of the investigation to investors in the Fund" at the time or anytime thereafter, though they knew that investors would act in reliance on the omission. (*Id.* ¶¶ 5–6, 31, 50, 52–54, 62). The Initial Complaints claims that "[a] reasonable person would [have] anticipate[d] from the criminal investigation that the Internal Revenue Service intended to audit and disallow the tax deductions passed through to the members of the Fund and claimed on their personal tax returns." (*Id.* ¶ 46). Second, the Plaintiffs allege that "the Fund, acting through [Oak Ridge] and Miller, ignored Plaintiffs' derivative demand that the Fund investigate Miller and MacLeod's wrongful actions." (*Id.* ¶ 109). Third, Miller apparently continues to be the Fund's IRS representative while remaining under criminal investigation for tax matters. (*Id.* ¶¶ 111–12). The Plaintiffs contend this is a disabling conflict of interest. (*Id.* ¶ 12).

In light of the above allegations, the Plaintiffs sought relief on six claims in their Initial Complaint: common law fraud (Count I, Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act violations (Count II), civil conspiracy (Count III), breach of fiduciary duty against Miller (Count IV, in the alternative to Counts I–III), appointment of a receiver (Count V), and attorney's fees (Count VI). The Plaintiffs additionally proposed the

certification of a class comprising "[a]ll persons that claimed a tax deduction on their federal or state tax return based on their membership in Monteagle-Oak Ridge Fund, LLC, excluding affiliates of Defendants." (*Id.* ¶ 37).

## II.  Legal Standard

Federal courts are courts of limited jurisdiction; they may only hear cases that the Constitution and the Congress of the United States have authorized them to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action originally brought in state court may be removed by a defendant to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441. On a motion to remand, the removing party bears the burden of establishing subject-matter jurisdiction. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)). Because of the limited authority of federal courts, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994).

Federal question jurisdiction exists where a plaintiff pleads a claim "arising under" federal law. 28 U.S.C. § 1331. The general test is whether "a

federal question appears on the face of the plaintiff's well-pleaded complaint."
*Anthem*, 591 F.3d at 1343. A case typically satisfies this test if the complaint
properly pleads a federal cause of action, *id.* at 1343, but it may also do so
where a complaint pleads only state law causes of action, *see Dunlap v. G&L
Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004). For complaints that
raise state law claims alone, federal question jurisdiction is warranted if the
claims "necessarily raise a stated federal issue, actually disputed and
substantial, which a federal forum may entertain without disturbing any
congressionally approved balance of federal and state judicial responsibilities."
*Adventure Outdoors, Inc. v. Bloomberg*, 552, F.3d 1290, 1296 (2008) (quoting
*Grable & Sons Metal Prods., Inc v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314
(2005)). The Eleventh Circuit has further recognized that

> [federal] law must be an essential element of [the Plaintiff's]
> claim[, and] the federal right or immunity that forms the basis of
> the claim must be such that the claim will be supported if the
> federal law is given one construction or effect and defeated if it is
> given another. [T]he mere presence of a federal issue in a state
> cause of action does not automatically confer federal-question
> jurisdiction.

*Dunlap*, 381 F.3d at 1290 (first, third, and fourth alterations in original) (first
quoting *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir.
1982); and then quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804,
813 (1986)). Where no federal question exists, diversity jurisdiction can be
invoked where there is complete diversity among the parties and the amount

in controversy exceeds $75,000, 28 U.S.C. § 1332(a), or, for class actions, where there is minimal diversity, the claim exceeds $5 million, and the proposed class members number at least 100 individuals, 28 U.S.C. § 1332(d)(2), (d)(5)(B).

Regarding the dismissal motions, a complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

11

### III.    Discussion

## A. Motion to Remand

### 1. Federal Question Jurisdiction

The Defendants argue that federal question jurisdiction is warranted "because Plaintiffs' state law claims require the determination of Internal Revenue Service regulations and guidance, among other federal statutes, regulations, and guidelines, such that there is a substantial federal question at issue." (Def. Oak Ridge's Resp. in Opp'n to Pls.' Mot. to Remand [Doc. 40], at 5; *see also* Def. MacLeod's Resp. in Opp'n to Pls.' Mot. to Remand, at 2–3 [Doc. 41]; Def. Miller's Resp. in Opp'n to Pls.' Mot. to Remand, at 2–3 [Doc. 42]). According to the Defendants, "[a]ll of Plaintiffs' claims rely on the underlying appraisal violating IRS regulations such that the IRS disallowed the tax deductions. If the appraisal is in fact in compliance with the IRS regulations, then Plaintiffs' claims fail." (Def. Oak Ridge's Resp. in Opp'n to Pls.' Mot. to Remand, at 7). The Defendants rely primarily on *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), a case in which the Eleventh Circuit held that federal question jurisdiction exists where the plaintiffs allege a Georgia RICO claim predicated on interpreting both (a) the National Traffic and Motor Vehicle Safety Act ("Safety Act") and (b) the federal mail and wire fraud statutes. *Id.* at 520. The *Ayres* court reasoned that "the case "involve[d] both (1) the *necessity* for Plaintiffs to prove, as an essential element of their state

law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action; and (2) the fact that proof of the alleged federal mail and wire fraud crimes involves a *very substantial* federal question." *Id.* (emphasis added). The Defendants argue that, here too, the Plaintiffs have brought a Georgia RICO claim that necessitates a substantial federal question because it is predicated on interpreting both (a) an IRS regulation regarding the appraisal performed and (b) the federal mail and wire fraud statutes.

However, the Court is persuaded that federal question jurisdiction does not exist and that *Ayres* is distinguishable regarding the two prongs of (1) necessity and (2) substantiality. First, the *Ayres* court found it significant that the Georgia RICO claim was predicated solely on federal law such that "resolution of th[e] case depend[ed] *entirely* on interpretation of the federal mail and wire fraud statutes and their interaction with the Safety Act." *Id.* at 518 (emphasis added); *see also TJM Columbus, LLC v. Holiday Hosp. Franchising, LLC*, 2023 WL 10407390, at *3 (N.D. Ga. Mar. 27, 2023) (finding federal jurisdiction where the Georgia RICO claim was "predicated solely on a violation of" both federal mail and wire fraud and the Amended Franchise Act—and no other state law claims). In other words, the plaintiffs in *Ayres* did not allege any predicate act of state law to their Georgia RICO claim. But, here, the Plaintiffs' Georgia RICO claim does not rely entirely on federal law because

13

the Plaintiffs also appear to allege a violation of state law—specifically state securities law under O.C.G.A. § 10-5-50 *et seq.*—as a separate predicate act to the RICO claim. (Initial Compl. ¶ 69; Br. in Supp. of Pls.' Mot. to Remand, at 8 [Doc. 32-1] (pointing out that the predicate acts of the RICO claim include violations of federal mail and wire fraud as well as state securities fraud); Pls.' Reply in Supp. of Mot. to Remand, at 13 [Doc. 46] (outlining additional RICO allegations that may be "successful notwithstanding any allegations regarding the appraisal")). The presence of both state and federal predicate acts means that interpreting federal law is not strictly necessary or otherwise "essential" to the cause of action in question. A number of other courts have distinguished *Ayres* on similar grounds. *See, e.g.*, *Scouten v. Amerisave Mortg. Corp.*, 2004 WL 5486512, at *2 (N.D. Ga. Dec. 16, 2004) ("Unlike the plaintiffs in *Ayres*, Plaintiffs here alleged predicate acts under Georgia law such that the alleged predicate acts under federal law are not 'an essential element of the Plaintiffs' cause of action.'" (quoting *Ayres*, 234 F.3d at 518)); *Lennar Corp. v. Briarwood Cap. LLC*, 430 B.R. 253, 263 (Bankr. S.D. Fla. 2010) ("The Court is persuaded by Plaintiffs' argument [that federal question jurisdiction does not exist] and finds that it may not be necessary for Plaintiffs to prove a federal violation here, where non-federal predicate acts [to the state RICO claim] are included in the Complaint."); *KJ's Gen. Contractors, Inc. v. J.E. Dunn Constr. Co.*, 2015 WL 5680379, at *3 (S.D. Ga. Sept. 25, 2015) ("Plaintiffs' Georgia RICO claims

14

do not rest solely on predicate offenses grounded in federal law. . . . Therefore, resolution of this claim is not entirely dependent on the Court's application of federal law."); *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 164 (3d Cir. 2014) ("Where '[p]laintiffs' state [law] RICO claims allege both federal and state predicate acts,' no federal question is necessarily raised because a Plaintiff could 'prevail upon their [state] RICO claims or any of their other state-law claims without any need to prove or establish a violation of federal law.'" (alterations in original) (citation omitted)); *see also Meridian Tr. Co. v. Barista*, 2018 WL 11460029, at *3 (S.D. Fla. Dec. 26, 2018) (distinguishing *Ayres* on the same grounds); *Ranjer Foods LC v. QFA Royalties LLC*, 2013 WL 489160, at *4 (D. Colo. Feb. 8, 2013) (same).

Second, in finding substantiality, the *Ayres* court focused on the fact that the Georgia RICO claim "involved two levels of federal questions," "requir[ing] the court 'to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law.'" *Donaldson v. GMAC Mortg. LLC*, 2010 WL 381838, at *5 (M.D. Ga. Jan. 26, 2010) (quoting *Adventure Outdoors*, 552 F.3d at 1302). While it may be true that the present case "involve[s] two levels of federal questions" due to the interaction between (a) IRS regulations and (b) federal mail and wire fraud, *see id.*, the Supreme Court has also instructed that "[t]he substantiality inquiry . . . looks [ ] to the importance of the issue to the federal system as a

15

whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). The Eleventh Circuit describes the reasoning behind this consideration as the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Adventure Outdoors*, 552 F.3d at 1295. The IRS regulation in question[4] defines a "qualified appraisal" as one that meets the Uniform Standards of Professional Appraisal Practice ("USPAP"). 26 C.F.R. § 1.170A-17(a)(1)–(2). The Plaintiffs argue that their state law claims "turn on the simple application of a federal regulation incorporating [USPAP]" and "depend on proof that the appraisal was inflated—not on a legal interpretation of the meaning of a federal statue or regulation." (Pls.' Reply in Supp. of Mot.

---

[4] The Defendants argue that "the Complaint also contains extensive allegations implicating federal law and federal issues" that go beyond the IRS regulation already mentioned and justify federal question jurisdiction. (Defs.' Joint Surreply to Pls.' Mot. to Remand [Doc. 51], at 2 n.2). The Court disagrees with this reading and only focuses on the IRS regulation involving appraisals. The Defendants cite ¶¶ 3–4, 7, 42, 46, 56 of the Initial Complaint. Paragraphs 3, 42, 46, and 56 appear to refer to Miller and MacLeod's alleged concealment of the federal criminal tax investigation, but the mere existence of a separate investigation involving federal law does not present a federal question that this Court must decide. Paragraph 4 states that the donor of a conservation easement qualifies for tax benefits under the tax code, but this fact, again, does not present a federal question that the Court must decide. Similarly, ¶ 7 merely notes the alleged fact that the IRS has disallowed the tax deduction and imposed fees but does so without implicating a need for further analysis of the tax laws or regulations underlying this outcome. Thus, the Defendants' arguments about other federal laws and regulations are unavailing.

to Remand, at 3). Moreover, they point out that the USPAP standard codified in the IRS regulation was developed by a nongovernmental entity, further suggesting that federal expertise and solicitude is not of particular importance to the application of this regulation. (*Id.* at 4). The Court is ultimately persuaded by this line of reasoning: applying the present facts to the USPAP-based IRS regulation does not present a "substantial" federal question justifying the need for federal experience, solicitude, or uniformity. "To be sure, the [Court] would have to apply federal law to reach its decision," but the "mere need" here to "apply federal law in a state-law claim" will not "suffice to open the 'arising under' door." *Adventure Outdoors*, 552 F.3d at 1300 (citing *Grable*, 545 U.S. at 313); *see also Bates v. Great Lakes Power Serv. Co.*, 2019 WL 13245177, at *5 (M.D. Fla. Dec. 3, 2019) (noting that "cases that present near 'pure issue[s] of law'" are "more likely to qualify as substantial," whereas "cases that are 'fact-bound and situation-specific'" are "less likely to qualify as substantial" (alteration in original) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006))); *Fed. Home Loan Bank of Atlanta v. Countrywide Secs. Corp.*, 2011 WL 1598944, at *2 (N.D. Ga. Apr. 22, 2011). As one district court stated, opening that door to state law claims that "stand upon such narrow ground . . . could potentially lead to a glut of state claims being filed in federal court." *Fraser v. FBM, LLC*, 2014 WL 1028917, at *3 (N.D. Ga. Mar. 17, 2014). Thus, the substantiality prong

17

weighs against finding federal question jurisdiction.

Lastly, a related third consideration not discussed significantly within *Ayres* but clearly important to the courts is whether a federal court may "entertain" a state law claim "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Adventure Outdoors*, 552 F.3d at 1295 (quoting *Grable*, 545 U.S. at 314). One part of this consideration is whether Congress established a federal cause of action for the federal law underlying the relevant state law claim. The Eleventh Circuit has stated that "the absence of a federal private right of action [ ] should be treated as evidence relevant to congressional judgment concerning the proper balance between state and federal jurisdiction." *Id.* at 1302–03 (citing *Grable*, 545 U.S. at 318); *see also id.* at 318 (stating that this evidence is relevant but not dispositive of Congress's intent). In the present case and as the Plaintiffs have argued, Congress did not create a private cause of action to enforce the IRS regulation under 26 C.F.R. § 1.170A-17(a)(1)–(2). (Pls.' Reply in Supp. of Mot. to Remand, at 4). The Court agrees that this fact "suggest[s] Congress did not intend for private litigants to enforce USPAP in a federal forum." (*Id.* at 4). A California district court dealing with another federal statute involving USPAP found similarly. *See Bolden v. KB Home*, 618 F.Supp.2d 1196, 1206 (C.D. Cal. 2008) ("[T]he exclusion of a private right of action in the [Federal Financial Institutions Reform, Recovery, and Enforcement Act] to enforce the USPAP,

18

although not dispositive, suggests that Congress did not intend for private litigants to enforce the USPAP in the federal forum."). Thus, this third consideration weighs against finding federal question jurisdiction and suggests that the present issue regarding the IRS regulation is "a minor issue capable of resolution in state court without upsetting the federal-state balance." *See Fraser*, 2014 WL 1028917, at \*3. Given all of the above considerations, the Court finds that this case does not fall into the "slim category" of cases in which federal question jurisdiction is warranted for a state law claim. *See Empire Healthchoice*, 547 U.S. at 701.

### 2. Diversity Jurisdiction

The Class Action Fairness Act of 2005 ("CAFA") establishes federal jurisdiction over class actions in which minimal diversity exists, the amount in controversy exceeds $5,000,000, and the number of proposed class members is at least 100. 28 U.S.C. § 1332(d)(2), (d)(5). Minimal diversity exists where "at least one plaintiff and one defendant are from different states." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (citing 28 U.S.C. § 1332(d)(2)). The parties appear to agree that the minimal diversity and amount-in-controversy requirements are satisfied, but they disagree on the class size requirement. (*See* Def. Oak Ridge's Resp. in Opp'n to Pls.' Mot. to Remand, at 11 n.5; Def. MacLeod's Resp. in Opp'n to Pls.' Mot. to Remand, at 3). The Defendants argue that the class size requirement is satisfied based on

19

a paragraph in the Initial Complaint regarding the Rule 23 numerosity requirement. (*See* Def. Oak Ridge's Resp. in Opp'n to Pls.' Mot. to Remand, at 11; Def. MacLeod's Resp. in Opp'n to Pls.' Mot. to Remand, at 3). That paragraph states that "Plaintiffs expect that there are approximately 100 class members." (Initial Compl. ¶ 40). The Defendants rely on *Carr v. Allstate Fire & Casualty Insurance Co.*, 2009 WL 10669418 (N.D. Ga. June 30, 2009), in stating that their "removal motion is properly based on the allegations in Plaintiffs' original complaint." (Def. Oak Ridge's Resp. in Opp'n to Pls.' Mot. to Remand, at 11; *see also* Def. MacLeod's Resp. in Opp'n to Pls.' Mot. to Remand, at 3; Def. Def. Miller's Resp. in Opp'n to Pls.' Mot. to Remand, at 2). The *Carr* court noted that precedent "requires a defendant to show—in the complaint, in the notice of removal pleadings, or in other evidence—that the . . . requirements of CAFA have been met." *Carr*, 2009 WL 10669418, at *5. In response, the Plaintiffs argue that their statement is "far from an admission that the class contains at least 100 members." (Pls.' Reply in Supp. of Mot. to Remand, at 6). "Rather, it merely reflects Plaintiffs' speculation as to the potential class size expressly limited by their lack of Defendants' records." (*Id.* at 6). The full statement in the Initial Complaint regarding the numerosity requirement is as follows:

> The members of the class are so numerous that joinder is impracticable. Defendants' records will establish the number of class members. Based on the amount raised in the offering, Plaintiffs expect that there are approximately 100 class members.

(Initial Compl. ¶ 40).

The Court finds that the Defendants have not met their burden to establish CAFA jurisdiction. The Plaintiffs are correct that *Carr* itself states that the Defendants must "show[ ] by a preponderance of the evidence—not a mere possibility—that the case" satisfies the CAFA requirements. *Carr*, 2009 WL 10669418, at *5. As noted in the Initial Complaint, the Defendants, not the Plaintiffs, possess the records that will establish the number of class members, and the Plaintiff have offered only a potential estimate. The Defendants do not dispute that they possess the relevant records, yet they have not relied on those records in asserting CAFA jurisdiction. Rather, they rely exclusively on the one sentence offered by the Plaintiffs, but this reliance is insufficient to establish a preponderance of the evidence. Therefore, the Court holds that it does not have diversity jurisdiction based on CAFA.

### B. Motion to Dismiss

Finally, the Defendants' motions to dismiss the Initial Complaint are denied as moot, given that the operative pleading for dismissal purposes is the Amended Complaint. Having now additionally found that the Court does not have subject-matter jurisdiction, the Court declines to rule on the Defendants' motions to dismiss the Amended Complaint and will remand these motions with the case for the Superior Court of Fulton County's consideration.

## IV.    Conclusion

For the foregoing reasons, Defendant Oak Ridge's Motion to Dismiss the Initial Complaint [Doc. 25] and Defendant MacLeod's Motion to Dismiss the Initial Complaint [Doc. 26] are DENIED as moot. Plaintiffs Epps and Hoipkemier's Motion to Remand [Doc. 32] is GRANTED. The Clerk is DIRECTED to remand this matter, including Oak Ridge and Defendant Miller's pending Motion to Dismiss the Amended Complaint [Doc. 34] and MacLeod's pending Motion to Dismiss the Amended Complaint [Doc. 35], to the Superior Court of Fulton County.

SO ORDERED, this ___18th___ day of November, 2024.

THOMAS W. THRASH, JR.
United States District Judge

22